IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,           CRIMINAL NO. 03-80810

        Plaintiff,           HONORABLE GERALD E. ROSEN

v.

D-1    AHMAD MUSA JEBRIL,
D-2    MUSA ABDALLAH JEBRIL,

        Defendants.
_____/

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, through its undersigned counsel, respectfully submits this Sentencing Memorandum regarding Defendants Ahmad Jebril and Musa Jebril, who are both scheduled to be sentenced on Monday, February 28, 2005. For the reasons provided below, the government recommends the following sentences for these defendants:

- As to **Ahmad Jebril, a sentence of 87 months**, the top of the guideline range of 70 to 87 months, as well as forfeiture of $200,000.00 and his interest in the following real properties:

    (1) 6250 Faust, Detroit, Michigan,
    (2) 6530 Artesian, Detroit, Michigan,
    (3) 6809 Plainview, Detroit, Michigan,
    (4) 4702 Palmer, Dearborn, Michigan,
    (5) 4637 Palmer, Dearborn, Michigan,
    (6) 4957 Rosalie, Dearborn, Michigan,
    (7) 4909 Rosalie, Dearborn, Michigan,
    (8) 12000 Sanford, Detroit, Michigan, and
    (9) 5745 Greenview, Detroit, Michigan,

    as well as his interest in the following real property as substitute assets:

    (1) 5102 McNichols, Detroit, Michigan,
    (2) 10306 Dix, Detroit, Michigan, and

   (3) 6129 Faust, Detroit, Michigan.

With respect to the money judgment of $200,000.00, Ahmad Jebril should be required to fill out a financial disclosure form in which he identifies assets that could be forfeited to satisfy the judgment.

- As to **Musa Jebril, a sentence of 78 months**, the top of the guideline range of 63 to 78 months, as well as forfeiture of $200,000.00 and his interest in the following real properties:

(1) 6250 Faust, Detroit, Michigan;
(2) 6530 Artesian, Detroit, Michigan;
(3) 6809 Plainview, Detroit, Michigan;
(4) 4702 Palmer, Dearborn, Michigan;
(5) 4637 Palmer, Dearborn, Michigan;
(6) 4957 Rosalie, Dearborn, Michigan;
(7) 4909 Rosalie, Dearborn, Michigan;
(8) 12000 Sanford, Detroit, Michigan; and
(9) 5745 Greenview, Detroit, Michigan;

as well as his interest in the following real property as substitute assets:

(1) 5102 McNichols, Detroit, Michigan;
(2) 10306 Dix, Detroit, Michigan; and
(3) 6129 Faust, Detroit, Michigan.

With respect to the money judgment of $200,000.00, Musa Jebril should be required to fill out a financial disclosure form in which he specifically identifies assets that could be forfeited to satisfy the judgment.

## BACKGROUND

This Honorable Court presided over the jury trial in this matter, and so is well aware of the evidence adduced and the facts found by the jury. To summarize very briefly, on Wednesday, November 24, 2004 following a trial spanning three weeks, the defendants were

convicted on all 42 counts of an indictment charging them with conspiracy, bank fraud, mail fraud, wire fraud, Social Security fraud, money laundering, failure to file income tax returns, and being felons in possession of firearms and ammunition.

The evidence presented at trial established that the Jebrils conspired to obtain money by fraud from insurance companies and banks, and that they committed the crimes of bank fraud, mail fraud, wire fraud, social security fraud and money laundering as they executed their scheme.  The defendants created false identities for themselves in alias names, with false social security numbers, fraudulently obtained driver's licenses, and false credit histories.  They opened post office boxes to receive mail in their alias identities.  They opened bank accounts in the names of non-existent companies.  They bought properties in Detroit, Lincoln Park and Dearborn – single family homes, apartment buildings and commercial buildings.  The defendants used their various aliases and a complex series of false quit claim deeds to conceal their ownership of the properties.  To further tangle the chain of title and avoid liability for property taxes, they transferred the properties to a non-existent person, "Sobhie Said Salem."  And they insured the properties, usually using their alias identities, falsely stating they owned the properties free and clear, without mortgages or land contracts.

Then Ahmad Jebril and Musa Jebril made false insurance claims of vandalism to the properties, often for damage they did themselves, and collected money from the insurance companies.  They supported their claims with fraudulent invoices, forged court documents, rental agreements and other papers that the defendants mailed or faxed to the insurance companies.  On several occasions, the defendants made insurance claims to more than one insurance company, and collected twice for the same damage on the same property.  The defendants laundered the

insurance proceeds through their bank accounts, and withdrew the money to make mortgage payments, pay insurance premiums, and to further their fraudulent scheme in other ways.

Most of their tenants knew Ahmad Jebril and Musa Jebril only by their alias names. The Jebrils pressured their tenants to pay their monthly rent in cash or by money order, and they willfully failed to report their income or to file tax returns with the Internal Revenue Service.

In 1998, the Jebrils were convicted by the State of Michigan of fraud relating to transfer of false titles to vehicles and other felonies; because they were found to be in possession of three shotguns and ammunition for the shotguns, as well as ammunition for semi-automatic weapons, on September 9, 2003, the jury also convicted them both of being felons in possession of firearms and ammunition.

The jury made special findings that the Jebrils' pattern of fraud resulted in losses of $200,000 to $400,000 to between 10 and 50 victims. The jury ordered the Jebrils to disgorge illegal profits totaling $200,000 to the United States, and to forfeit their interest in 12 real properties, including two apartment buildings.

## SENTENCE CALCULATION

### A. Statutory Maximum Sentence

The felony offenses of conviction carry maximum sentences of from 5 to 30 years, and possible fines of $250,000 to $1,000,000. Failure to file income tax returns is a misdemeanor with a maximum sentence of 1 year and a maximum fine of $25,000.

### B. Sentencing Guidelines Calculations

The presentence reports for the two defendants calculate guidelines of 57 to 71 months for Ahmad Jebril, and 51 to 63 months for Musa Jebril. However, the reports do not include a 2-level enhancement for attempted obstruction of justice relating to the attempt to bribe the juror in

4

seat nine ["Juror Nine"].  This Honorable Court revoked the defendants' bond on November 12, 2004, after Juror Nine came forward and stated she had been approached and offered money to vote not guilty, and to persuade her fellow jurors to acquit the Jebrils.  The Jebrils were indicted for this conduct on February 23, 2005 in Criminal Case No. 05-80175, as was co-conspirator Radwan Almadrahi; in a 3-count indictment, the defendants are charged with conspiring to commit federal crimes, and aiding and abetting each other in attempting to bribe a juror, and in attempting to corruptly influence a juror.  Therefore, the government has calculated a higher guideline range for each defendant, assessing two points for obstruction of justice.

The government agrees with the guidelines calculations made by the Probation Department in the presentence reports for each defendant, with the addition of a two-level increase for obstruction of justice relating to the attempts to bribe or influence Juror Nine.  The government respectfully recommends that the Court impose a period of incarceration at the top of the guidelines ranges for each defendant, because their fraudulent conduct began so long ago and continued unabated despite their convictions by the State of Michigan, and because of their attempts to corrupt the administration of justice by having a juror contacted in this case.

      C.      **The Sentencing Guidelines After *Booker***

This case is in a unique position, because it was tried after the United States Supreme Court decided *Blakely v. Washington*, 124 S. Ct. 2531 (2004)*,* and before its decision in *United States v. Booker*, 2005 WL 50108 (U.S. Jan. 12, 2005).  Therefore (but for the two-level enhancement for obstruction as set forth above), the sentencing enhancements were presented to a grand jury and indicted.  They were presented once again to the trial jury, with instructions to determine whether the proofs established the enhancements beyond a reasonable doubt.  The trial

5

jury found that all the enhancements had been proved, except for bank fraud over $200,000; however, the jury did find that the conspiracy caused losses between $200,000 and $400,000.

Nonetheless, because of the *Booker* decision, the United States Sentencing Guidelines are no longer mandatory; this Court is not prohibited from imposing a sentence outside the applicable guideline range, up to the statutory maximum for each count of conviction. *Booker,* 2005 WL 50108, at *16. The sentence imposed will be subject to review by the Court of Appeals for "reasonableness." *Id.* at *24. The Supreme Court determined that federal sentences must conform to the goals and policy determinations set forth by Congress in 18 U.S.C. § 3553(a), including most significantly the goal of reducing sentencing disparity. The first step in that effort remains the calculation of a sentencing guideline range. As the Supreme Court stated, the "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." *Id..* at *27.

Consistent with this, the government commends to the Court's attention the recent opinion in *United States v. Wilson*, 2005 WL 78552 (D. Utah Jan. 13, 2005), in which Judge Cassell noted that the guidelines represent the product of an expert commission, which has studied the sentencing process at great length, under the specific mandate of Congress to fashion recommended sentences which carry out the purposes defined by Congress. The resulting Guidelines, according to *Wilson*, plainly reflect the public's will, as expressed by their democratically elected representatives, in that Congress has repeatedly approved of the Guidelines or acted to adjust them to Congressional preference. *Wilson* further observed that guided sentencing appears to have had a positive impact in deterring criminal conduct throughout the country, and thus serves the purpose of deterrence as well as punishment and fairness. For all of these reasons, Judge Cassell determined that "the court will give heavy

6

weight to the Guidelines in determining an appropriate sentence. In the exercise of its discretion, the court will only depart from those Guidelines in unusual cases for clearly identified and persuasive reasons." *Id.* at *1.

The Sentencing Reform Act also sought to reduce the incidence of sentence disparities which had previously occurred in federal sentences. That congressional priority remains a significant factor for the court to implement in sentencing. Indeed, running through all of the opinions in *Booker* is a recognition of this important policy goal. *See, e.g., id.* at *21 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); *id.* at *19 ("Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction."); *id.* at *42 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); *id.* at *47 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity"). Relying upon the Sentencing Guidelines range as presumptively correct will, of course, effectuate this congressional mandate.

Finally, the government further notes that the *Booker* court left intact those portions of the Sentencing Reform Act which require a sentencing court to state in the Judgment and Commitment Order the specific reasons for any sentence which deviates from the applicable guideline range. 18 U.S.C. § 3553(c). The guidelines are presumed to be reasonable and to accommodate the goals of obtaining fair sentences, and avoiding sentencing disparities. Therefore, the government respectfully recommends that the Court sentence the defendant within

the Guidelines ranges set forth above, and urges the Court to sentence these defendants at the top of their respective ranges.

### D. Restitution

The government agrees with the restitution recommendations provided in the Presentence Investigation Report, with one update: Michigan Basic Insurance Company has now identified $155,639.99 in losses caused by the Jebrils (*see* attached letter from Ruth Hannam dated 1/25/05), a slight increase over the $150,074.98 in losses set out in the PSR.

The government agrees that identified victims should be compensated by the defendants.

### E. Forfeiture and Restitution

The government respectfully recommends that both forfeiture and restitution be made part of defendants' sentences. Forfeiture and restitution are independent aspects of the defendants' sentences and are not mutually exclusive. Specifically, forfeiture removes the fruits and instrumentalities of the crime and operates as a disincentive to committing crimes in the first place. Restitution, on the other hand, compensates victims. Accordingly, a defendant is not entitled to a credit against a restitution order for the amount he is required to forfeit, or *vice versa*.

Moreover, forfeited property is deemed the government's property. Upon entry of a final order of forfeiture, the government's ownership of the property relates back to commission of crime date. 21 U.S.C. § 853(c). Section 853(c) provides, in relevant part:

> All right, title and interest in property described in subsection (a) of this section vests in the United States upon commission of the act giving rise to the forfeiture under this section.

21 U.S.C. § 853(c). Thus, if forfeiture is applied to restitution, the court is asking the government to pay for the defendants' restitution.

Therefore the government respectfully requests that both forfeiture and restitution be made part of the defendants' sentences.

F.       **Government's Recommendation as to Sentences**

For all of the reasons set forth above, the government respectfully urges this Honorable Court to impose the sentences set forth at the outset of this memorandum.

Respectfully submitted,

STEPHEN J. MURPHY
United States Attorney


 s/Cynthia Oberg
CYNTHIA OBERG  (P 36338)
Assistant United States Attorney
(313) 226-9701


 s/Julie Beck
JULIE A. BECK  (P 53291)
(313) 226-9717

211 West Fort, Suite 2001
Detroit, Michigan  48226


Date:   March 14, 2005

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,	CRIMINAL NO. 03-80810

        Plaintiff,	HONORABLE GERALD E. ROSEN

v.

D-1   AHMAD MUSA JEBRIL,
D-2   MUSA ABDALLAH JEBRIL,

        Defendants.
_____/

CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2005, I electronically filed the foregoing document with the Clerk of the Court using the ECF System which will send notification of such filing to the following jctdetroitlaw@msn.com, btessier3@hotmail.com and I hereby certify that I have mailed by United States Postal Service the document to the following non-ECF participants:

**Stephen Rabaut**
1990 East 10 Mile Road
St. Clair Shores, MI 48080


                                                    Darlene Secord, Paralegal
                                                    211 W. Fort Street, Suite 2001
                                                    Detroit, MI  48226
                                                    (313) 226-9722